**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**In re:**

**L. FRUMUSA FAMILY ENTERPRISE P1, LLC,**         CASE NO. 10-21371

                              Debtor.         DECISION & ORDER

_____

### BACKGROUND

On December 29, 2010, Morgan Serene Park, LLC ("MSP") filed a Motion for Order Dismissing Case and Authorizing Dissolution of L. Frumusa Family Enterprise P1, LLC ("P1") pursuant to 11 U.S.C. § 1112(b) (the "Motion to Dismiss").

The relevant background for this Decision & Order is as follows:[1]

1. Lawrence Frumusa ("Frumusa") caused to be filed several Chapter 11 cases, including, on April 3, 2009, Lawrence Frumusa Land Development LLC ("Land Development"), and, on June 5, 2009, an individual case (the "Frumusa Case"). These cases were ultimately converted to Chapter 7 cases, at which time Michael H. Arnold, Esq.

---

[1] This Decision & Order does not involve complicated issues of law or fact, and is of no real precedential value, except that it becomes the law of this case. It is, however, being issued because the Court has allowed the petitioning creditors, members of the Creditor's Committee and Lawrence Frumusa, over the consistent objections of other interested parties, to proceed on a *pro se* basis, in part because information has been forthcoming that has been useful in various affiliated cases, so the Court believes that issuing a short written decision on the Motion to Dismiss, rather than having issued an oral decision at the February 9, 2011 final hearing on the Motion, will allow the members of the Committee and Lawrence Frumusa to better understand the Court's rulings.

**BK. 10-21371**

("Trustee Arnold") was appointed as the Chapter 7 Trustee for Land Development, and Lee E. Woodard, Esq. ("Trustee Woodard") was appointed as the Chapter 7 Trustee for the Frumusa Case;

2. On May 19, 2010, various alleged creditors of P1 filed an involuntary Chapter 11 case in the United States Bankruptcy Court for the Northern District of New York, Albany Division, a clearly improper venue, at a time when real property owned by P1, commonly known as Phase 1, Scenic Village ("Phase 1"), was the subject of a pending New York State Court mortgage foreclosure proceeding (the "Foreclosure Proceeding"), in which a receiver had been appointed (the "Receiver");

3. The P1 case was later transferred to this Court, and when an order for relief was entered on September 15, 2010 (the "Order for Relief"), the Court, pursuant to Rule 9001, designated Trustee Arnold as the individual responsible to file schedules and act on behalf of P1, because, at the hearing in connection with whether an order for relief should be entered, Frumusa indicated on the record that Land Development owned the membership interest in P1. For purposes of the P1 case to date, the Court has accepted that the Land Development estate is the owner of the membership interest in P1, without prejudice to the Court making a final determination of the ownership, if it should ever be required to do so;

**BK. 10-21371**

4. Between the filing of the involuntary petition and the entry of the Order for Relief, MSP, which had purchased the first mortgage on Phase 1 subsequent to the commencement of the Foreclosure Proceeding, filed a Motion to Terminate the Automatic Stay, which requested that it be allowed to proceed with all aspects of the Foreclosure Proceeding.  The Court granted the Motion and an order was entered on September 2, 2010 (the "Stay Order"), after there was no substantive opposition interposed by any of the petitioning creditors or Frumusa, and MSP had met its burden to obtain relief from the stay.  The Stay Order has never been effectively appealed;

5. While the Court had accepted Frumusa's indication that Land Development was the owner of the membership interest in P1 for purposes of moving the P1 case forward, it also, in the absence of substantive opposition, approved a global settlement (the "Global Settlement") among MSP, Trustee Arnold and Trustee Woodard, as Trustees of the respective estates of Land Development and the Frumusa Case,[2] which, for monetary consideration, transferred to MSP any interests that P1 might have had in various personal property assets, including leases and non-fixtures located at Phase 1.  The order approving the Global Settlement, payment and

---

[2] Trustee Arnold and Trustee Woodard indicated in connection with the Global Settlement that there might be reason to believe that the membership interest in P1 was in fact owned by Frumusa.

acceptance of consideration, and transfer of interests, has never been effectively appealed;

6. On December 10, 2010, a creditor's committee (the "Creditor's Committee") was appointed in the P1 case, however, the Committee has never engaged counsel to represent it, in part because the Committee has acknowledged that there were no unencumbered assets available in the P1 estate to pay an attorney for the Committee;

7. The Motion to Dismiss asserted that: (a) Phase 1 was sold at a foreclosure sale conducted on November 4, 2010, at which time MSP was the successful bidder and it received a deed of Phase 1, after which MSP filed an unsecured proof of claim in the P1 case for not less than two million dollars ($2,000,000.00), representing its mortgage deficiency; (b) on December 15, 2010, New York State Supreme Court Justice Kenneth Fisher ("Justice Fisher"), entered an order: (i) approving the Receiver's accounting; (ii) discharging the Receiver; and (iii) directing the turnover of the balance of amounts on deposit with the Receiver to MSP, which included tenant security deposits; (c) other than MSP, the vast majority of creditors listed by Frumusa on the schedules of assets and liabilities that he filed in the P1 case, on behalf of P1, appeared to be creditors of Land Development that had worked on completing Phase 1 prior to August 2008, when Land Development deeded the Phase 1 real property to P1; (d) the scheduled unsecured creditors

**BK. 10-21371**

and unsecured creditors who had filed claims in the P1 case, other than MSP, had aggregate claims of significantly less than $400,000.00, so the unsecured claim of MSP was greater than the aggregate of all other potentially valid claims; (e) there were no longer any assets in the P1 case to be administered, because no other assets had been scheduled as owned by P1, as a result of: (i) the termination of the Foreclosure Proceeding and the Receivership; (ii) the transfer of all of the amounts on deposit with the Receiver to MSP; and (iii) the transfer of any other interests that P1 might have had in property related to Phase 1 by Trustees Arnold and Woodard as part of the Global Settlement; and (f) the involuntary petition was orchestrated by Frumusa to circumvent the Court's November 6, 2009 Order, which dismissed a prior case filed by Frumusa without an attorney, on behalf of P1, and which indicated that no further petitions could be filed on behalf of P1 that were not filed or authorized by both Trustee Arnold and Trustee Woodard, or either of them, since it was unclear to the Court at that time what entity owned the membership interest in P1;

8. On January 12, 2011, Trustee Arnold filed an Affirmation in support of the Motion to Dismiss, which asserted that as the Trustee of Land Development, the accepted owner of the membership interest of P1 for purposes of moving the P1 case forward, he had

**Page 5**

determined that: (a) at the time of the Motion, P1 no longer had any assets or income whatsoever; (b) there was no reason to continue the Chapter 11 case, since P1 could not reorganize with no assets or income; and (c) no quarterly fees had been paid to the Office of the United States Trustee (the "U.S. Trustee"). Trustee Arnold also indicated that he agreed that there was no reason for P1 to continue to exist as an LLC, so that he should be granted the authority to dissolve P1, as the Trustee of Land Development which owned the membership interest;

9. The Court notes that on or about October 27, 2010, Frumusa, on behalf of P1,[3] filed an Affidavit in Opposition to a prior motion to dismiss the P1 case brought before the Court by Trustee Arnold and MSP, which the Court ultimately denied without prejudice. The Affidavit asserted that: (a) in July 2009, after the Land Development case had been converted to a Chapter 7 case and Trustee Arnold was appointed, Trustee Arnold illegally seized control of the assets of Phase 1, including its rents; and (b) Trustee Arnold intentionally devalued Phase 1 by defaulting on the first mortgage by failing to make mortgage payments with the rents he had collected;

---

[3] Frumusa has continually asserted that he is the debtor-in-possession of P1 because he was the managing member of P1 prior to the involuntary petition, notwithstanding that after June 5, 2009, at the latest, the membership interest of P1 was owned by either the estate of the Frumusa Case or the estate of Land Development, and therefore controlled by Trustee Woodard or Trustee Arnold.

**BK. 10-21371**

10. On December 13, 2010, a Resolution of the members of L. Frumusa Family Enterprise P1, LLC was filed with the Court, dated November 30, 2010, signed by Trustee Arnold and Trustee Woodard, which, in part, stated that it was, "[r]esolved, that the undersigned hereby declare and reaffirm that Lawrence Frumusa is not authorized, and shall not, act on behalf of P1 in any manner whatsoever" (the "P1 Resolution"); and

11. At hearings conducted by the Court on the prior motion to dismiss and the Motion to Dismiss, the Court: (a) accepted that Trustee Arnold had properly accounted for all of the rents that he had collected in connection with Phase 1, and that his accounting for the rents had in fact been reviewed and accepted by the U.S. Trustee and the Receiver in the Foreclosure Proceeding; (b) confirmed that no quarterly U.S. Trustee fees had been paid in the P1 case; and (c) confirmed that: (i) monies that members of the Creditor's Committee and Frumusa asserted were on deposit in the Monroe County Clerk's Office in connection with mechanics' lien proceedings and were assets of P1, were not deposited by P1, but were deposited by Frumusa on behalf of Land Development, or one of Frumusa's affiliated entities other than P1; and (ii) documents that Frumusa had asserted would demonstrate that those deposits had been legally transferred to P1, were, in fact, never filed with the

**BK. 10-21371**

Court as promised by Frumusa, even though more than sufficient time to file the documents had passed.

## DISCUSSION

The Motion to Dismiss is in all respects granted, with prejudice to the filing of any future bankruptcy case by or on behalf of P1, including any involuntary petition, unless the case is filed both by Trustee Arnold and Trustee Woodard, or either of them, for the following reasons:

1. With the transfer to MSP of all interests in Phase 1, as a result of the Foreclosure Proceeding and the Global Settlement, P1 no longer owns any of its scheduled real or personal property, and it no longer has any income or business operations that could be utilized to reorganize, or that could be administered in a Chapter 7 case, so that dismissal, rather than conversion, is warranted;

2. It has not been proven that P1 has any other income or other personal property assets that could be used to pay for attorneys, either for P1 or the Creditor's Committee, in connection with a Chapter 11 reorganization, and P1, as an LLC, can no longer continue unrepresented by counsel in a Chapter 11 case, pursuant to various Decisions of the United States District Court for the Western District of New York;

3. Any personal property assets in which P1 may have had an interest in connection with its former operation of Phase 1, have

**Page 8**

**BK. 10-21371**

been validly transferred to MSP, either as part of the Foreclosure Proceeding, or as authorized by this Court as part of the Global Settlement;

4. All of the rents and other amounts on deposit in the account of the Receiver in the Foreclosure Proceeding have been validly disbursed pursuant to Justice Fisher's orders, including tenant security deposits. Those assets are no longer assets of P1, and none of Judge Fisher's orders in connection with the Foreclosure Proceeding violated the automatic stay, which had been terminated by this Court's Stay Order;

5. Even though more than sufficient time had expired, Frumusa's promise to file documents that would clearly demonstrate that certain monies on deposit at the Monroe County Clerk's Office were in fact validly transferred to, or were otherwise owned by P1, those documents have never been filed with the Court.[4] Therefore, the Court finds that all of the monies on deposit, if any, deposited by or on behalf of entities other than P1, are not assets of P1, and turnover proceedings that have been filed by the Creditor's Committee and/or Frumusa, are hereby deemed moot by reason of this Decision & Order, and they will be stricken from the

---

[4] Frumusa never scheduled any of these deposits as potential assets of the Frumusa Case or the cases of Land Development or P1, and he never made any interested party, including the U.S. Trustee or Trustees Arnold or Woodard, aware of these deposits before the Motion to Dismiss was filed.

Page 9

**BK. 10-21371**

Court's upcoming calendars on which they were made returnable by Frumusa and/or the Committee;

6. No quarterly U.S. Trustee fees have been paid, which in itself is a basis for dismissal or conversion under Section 1112(b), and there are no assets to pay those fees;

7. Based upon the evidence presented to date, this Court finds that any and all allegations made by the Creditor's Committee members and/or Frumusa, that P1 has causes of action against Trustee Arnold for allegedly illegally collecting the rents of P1 at Phase 1, or defaulting on the first mortgage on Phase 1, are completely meritless, because: (a) based upon Frumusa's own assertions, Trustee Arnold was the owner of the membership interest in P1 at the time he collected the rents; (b) Trustee Arnold has fully accounted for the rents, none of which were improperly utilized; and (c) despite more than one year having passed since Frumusa initially alleged that Trustee Arnold caused a default on the first mortgage, Frumusa has provided no evidence to this Court that the mortgage was not otherwise in default, or that there were any damages resulting from a failure to pay the mortgage, since based upon all of the evidence, proceedings and hearings that this Court has conducted in the P1 case and related cases, this Court is convinced that Phase 1 could never have operated independently of Phase 2 and otherwise been independently reorganized;

Page 10

Case 2-10-21371-JCN   Doc 184   Filed 02/14/11   Entered 02/14/11 15:04:51   Desc
Main Document    Page 10 of 12

**BK. 10-21371**

8. No party has demonstrated that P1 has any other valid causes of action. To the contrary, the Court has only heard a series of unsubstantiated, unfounded and undocumented allegations of such causes of action;

9. Only MSP and one other creditor have filed proofs of claim in the P1 case, and even though the time to file proofs of claim has not expired, the Court, based upon the evidence before it, believes that the vast majority of the creditors that Frumusa has scheduled as creditors of P1, including the petitioning creditors, are in fact creditors of Land Development. Once again, no documentation has been filed with the Court, although more than sufficient time has passed, to demonstrate that they are creditors of P1. Nonetheless, MSP holds an unsecured claim, which: (a) was purchased from a third party; and (b) exceeds the aggregate of any other possible, valid unsecured claims against P1, so its request for dismissal represents the best interests of creditors, for purposes of Section 1112(b); and

10. There is no reason for this Court to replace the business judgment of Trustee Arnold in his request to be granted authority from this Court to dissolve P1 with the New York State Secretary of State, should he feel that it is warranted, including in order to prevent additional frivolous litigation in any state or federal court.

## CONCLUSION

The P1 case is dismissed with prejudice, as more fully detailed in this Decision & Order, and Trustee Arnold is authorized to dissolve P1 in accordance with New York State Law.

**IT IS SO ORDERED.**

```
            /s/
HON. JOHN C. NINFO, II
U.S. BANKRUPTCY JUDGE
```

**Dated: February 14, 2011**